IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | CASE NO. 8:10CR132 |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | MEMORANDUM |
| | ) | AND ORDER |
| KALVIN THOMAS, | ) | |
| | ) | |
| Defendant. | ) | |

This matter is before the Court on the Findings and Recommendation (Filing No. 52) issued by Magistrate Judge F.A. Gossett recommending that the motion to suppress (Filing No. 25) filed by the Defendant, Kalvin Thomas, be denied. Thomas filed a statement of objections to the Findings and Recommendation and a supporting brief (Filing Nos. 62, 63), and the government filed a response (Filing No. 65).

Thomas is charged in a two-count Indictment with possession of cocaine base with intent to distribute (Count I) and being a felon in possession of a firearm (Count II). He seeks the suppression of statements obtained after his arrest and visual body cavity search.

Following an evidentiary hearing, Judge Gossett issued oral findings of fact and conclusions of law and a one-page Findings and Recommendation. (Filing No. 52.) Judge Gossett concluded: *Miranda* applied and the warnings were given in the bathroom and at police headquarters; the two statements given in the living room were voluntary and *Miranda* did not apply to those statements; and the *Miranda* waivers were voluntary. In particular, Judge Gossett concluded that Thomas's free will was not overborne due to coercive police activity in performing a visual body cavity search. Judge Gossett therefore recommends that the motion to suppress be denied.

## STANDARD OF REVIEW

Under 28 U.S.C. § 636(b)(1)(C), the Court must make a de novo determination of those portions of the findings and recommendation to which the Defendant has objected. The Court may accept, reject, or modify, in whole or in part, the Magistrate Judge's findings or recommendations. The Court may also receive further evidence or remand the matter to the Magistrate Judge with instructions.

## STATEMENT OF FACTS

Briefly, officers had information from a confidential informant ("CI") that Thomas was selling crack cocaine from his residence. Officers and the CI performed a controlled buy at the residence. A check of Thomas's record revealed prior gun and robbery convictions and a gun charge that had been dropped. Thomas was a known gang member. A no-knock search warrant was issued.

On March 1, 2010, at approximately 6:30 p.m. armed SWAT team officers executed the search warrant. A gun and crack cocaine were found on top of a dresser in a bedroom. Officer Taylor told Thomas that he and Officer Becker were going to do a strip search in the bathroom "because it was listed in the warrant."[1] A diagram and pictures of the bathroom are in evidence. (Ex. 101-109.) A pat search was not done. The bathroom door was closed during the search for contraband and weapons. Officer Taylor asked Thomas if he had been strip-searched before, and Thomas responded he had been the subject of such searches in prison. Officer Taylor explained the procedure that Officer Taylor testified was done for officer safety. Thomas had been handcuffed, but the handcuffs were removed for

---

[1]The warrant did not authorize a strip search, a visual body cavity search, or any similar type of search. The warrant authorized a search of Thomas's person. (Ex. 2.)

the five-minute search after a pat search of Thomas's pockets to make sure he had no weapons in his pockets.  Thomas was compliant; he struggled due an injured ankle as he stepped into the bathtub; he removed one piece of clothing at a time until he was naked; he spread his buttocks; he manipulated his testicles so officers could view the area of his genitalia; and he dressed himself.  Nothing was found during the search of Thomas's person.

Officer Becker gave Thomas his *Miranda* warnings and questioned him in the bathroom while Officer Taylor was still present.  Thomas made incriminating statements.  The "conversation" lasted approximately ten minutes.  (*Id.* at 19.)  Thomas was then taken to the living room and secured with other occupants of the home while evidence was inventoried.  Thomas made additional incriminating statements in the living room.  He was taken to police headquarters where he again waived his *Miranda* warnings and gave incriminating statements.  The interview ended when Thomas requested an attorney.

## DISCUSSION

The Court has considered the transcript of the hearing conducted by Judge Gossett and has viewed the evidence.  Based on the Court's de novo review of the evidence and arguments, the Court adopts Judge Gossett's factual findings.

Under *United States v. Chaidez,* 906 F.2d 377 (8th Cir. 1990), the following factors must be considered in determining whether Thomas's *Miranda* waiver and statements were voluntary: his age; his general intelligence and education; whether he was under the influence; whether he was told of his right to withhold consent; and the extent to which he was aware of his rights due to previous arrests.  *Id.* at 381.  In considering the environment, the Court must consider whether Thomas: was detained or questioned for a long time; was

threatened or otherwise intimidated; relied on promises or misrepresentations; was in custody or under arrest; was in a public or secluded place; or objected to the search.  *Id.* None of these factors is to be applied mechanically.  *Id.*

The record includes no information that Thomas's age, general intelligence or education raise concern.  He did not appear to be under the influence.  Thomas's prior criminal history resulted in his familiarity with his rights surrounding questioning and searches, specifically "strip" searches.  Despite the SWAT team entry, the search and waiver process was calm and, although awkward for obvious reasons, nonthreatening.  Thomas had an injured ankle, but the injury did not appear severe.  The Court has viewed the DVD showing Thomas's questioning at police headquarters and, at that time, Thomas was very calm and cooperative.

The Court agrees with Judge Gossett that the visual body cavity search was "coercive" but not "unduly coercive."  (Filing No. 55 at 97.)  The visual body cavity search conducted almost immediately upon the SWAT team's entry, and without a pat search leading to suspicions, or any other specific information that Thomas was concealing drugs or weapons on his person, is bothersome.  As disturbing as the officers' actions were in this case, however, this is not a case requiring an analysis under *Bell v. Wolfish,* 441 U.S. 520 (1979), in which the Supreme Court articulated a balancing test for determining whether a visual body cavity search is reasonable under the Fourth Amendment.[2]  *Id.* at 559.  Indeed, if *Bell* were the appropriate analysis this would be a difficult case.  In reaching its

---

[2]Under *Bell,* a Court must balance the need for the search in question with the invasion of personal rights.  Considerations ate: the scope of the intrusion; the manner in which the search was conducted; the justification for the search; and the place where the search was conducted.  *Bell,* 441 U.S. at 559.

4

decision under the *Chaidez* analysis, the Court is mindful of the *Bell* analysis. However, even if the visual body cavity search performed on Thomas were viewed as inappropriate and coercive, it is not outweighed by the other *Chaidez* factors indicating that the statements, and the waivers of Miranda rights, were voluntary.

## CONCLUSION

For the stated reasons, the Court concludes that Thomas's waiver of his *Miranda* rights and his statements were voluntary and his motion to suppress statements is denied.

IT IS ORDERED:

1. The Magistrate Judge's Findings and Recommendation (Filing No. 52) is adopted;

2. The Defendant's objections to the Findings and Recommendation (Filing No. 62) are overruled;

3. The government's response (Filing No. 65) is granted; and

4. The Defendant's motion to suppress (Filing No. 25) is denied.

DATED this 5th day of October, 2010.

BY THE COURT:

s/Laurie Smith Camp
United States District Judge